Willie CHRISCO, Plaintiff,

v.

Milton P. SHAFRAN and Carl Williams, Defendants.

Civ. A. No. 79–522.

United States District Court, D. Delaware.

Feb. 11, 1981.

John J. O'Brien, and John C. Laager, Wilson & Whittington, P. A., Wilmington, Del., for plaintiff.

Paul P. Welsh, and Donald F. Parsons, Jr., Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for defendant Shafran.

Samuel Russell, Biggs & Battaglia, Wilmington, Del., for defendant Williams.

**1314**

## OPINION

MURRAY M. SCHWARTZ, District Judge.

Willie Chrisco, a former officer of the Wilmington Police Department, has brought a civil rights action pursuant to 42 U.S.C. §§ 1983 and 1985 against Carl Williams, a Delaware State Police Officer, and Milton Shafran, a former Delaware Deputy Attorney General. Chrisco seeks damages for alleged violations of his 4th, 5th, 6th and 14th amendment rights by Williams and Shafran during the course of an investigation of corruption in the sale of goods by the Diamond Chemical Company to the Wilmington School Board.

Shafran and Williams were part of a State of Delaware Department of Justice force that in April 1977 began investigating allegations by informants that Wilmington School Board employees were stealing Diamond Chemical products from the School Board warehouse and then returning the products to Diamond Chemical for eventual resale to the School Board. By May 1977 the investigation had focused on certain employees of both the School Board and Diamond Chemical. During the course of the investigation, one of the informants told the investigators that he had attended a meeting in 1976 at which he had provided four Wilmington police officers with specific evidence of the unlawful scheme. Shafran and Williams then sought to interview the four Wilmington police officers alleged to have attended the 1976 meeting, apparently both to get further information about the Diamond Chemical scheme, and to determine whether there had been any attempt to corrupt those officers.

In October 1977 Shafran and Williams first contacted Chrisco, one of the four police officers at the 1976 meeting. According to Chrisco, Williams and Shafran interviewed him at least six times during October and November for periods of up to eight hours per meeting. Chrisco alleges that the defendants told him that he was only a witness and not a target of the

investigation, that he was not given his *Miranda*[1] warnings, and that Shafran and Williams told him he could not discuss the interviews with anyone, including any attorney or his police department superiors.

Chrisco claims that at the last meeting Shafran and Williams told him they had discovered he had perjured himself (Chrisco was under oath at these meetings), and then said that they would arrest him and cause him to be indicted for perjury unless he agreed to plead guilty to a departmental charge of lying under oath.[2] Williams and Shafran promised Chrisco that he would not be fired from his job if he pleaded guilty to the departmental charge, and they summoned Harry Manelski, the Wilmington Police Chief, who "verified" the agreement. Chrisco accepted the "plea agreement" and subsequently pleaded guilty to perjury before the Wilmington Police Trial Board, at which time he was represented by an attorney. The Trial Board ordered Chrisco fired, but on appeal he was reinstated at the reduced rank of Patrolman. No criminal charges of any nature were ever filed against Chrisco.

Chrisco alleges that Williams and Shafran, acting under color of state law, deprived him of the following federal constitutional rights: (1) 5th and 14th amendment rights not to be deprived of liberty without due process of law; (2) 6th amendment right "to be informed of the true nature and cause of the accusation against him"; (3) 5th amendment right "not to be subjected to coercion intended to secure a confession or plea of guilty"; (4) 6th amendment right to be represented by an attorney; (5) 14th amendment right not to be compelled to incriminate himself; and (6) his 14th amendment right to be free from unreasonable searches.

Defendants Williams and Shafran have moved to dismiss the complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

1. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. *See* Complaint (Doc. No. 1) at 2.

Williams argues that the complaint should be dismissed because it fails to allege that the defendants acted with the intent or purpose necessary to a cause of action under sections 1983 and 1985, and because the complaint, in any event, fails to allege any conduct by the defendants which, if proven, would constitute a violation of any of Chrisco's constitutional rights. Shafran contends that the action must be dismissed because he has an absolute prosecutorial immunity, because the facts alleged fail to make out a violation of any of Chrisco's constitutional rights, and because the complaint fails to allege with sufficient specificity the acts of Shafran alleged to have violated Chrisco's civil rights.

The Court will consider the issues presented in the following order: (1) whether Chrisco has satisfied the pleading requirements of sections 1983 and 1985; (2) whether Chrisco's factual allegations amount to cognizable constitutional claims; (3) whether Shafran is entitled to an absolute prosecutorial immunity; and, (4) whether the complaint has been drafted with sufficient factual specificity.

Although no party has expressly moved for summary judgment, Chrisco and Shafran have submitted affidavits in connection with the motions to dismiss. The Court has considered the affidavits in connection with Chrisco's claim of deprivation of liberty and will therefore treat defendants' motions as motions for summary judgment to the extent they challenge the claimed deprivation of liberty. In all other respects defendants' motions have been treated as pure motions to dismiss, and the Court has looked solely to the complaint, accepting as true all well-pleaded factual allegations.

Before proceeding to the various claims raised by defendants, it will be helpful to articulate what claims Chrisco has and has not raised in his complaint. Most significantly, Chrisco does not raise any procedural due process claims against the Wilmington Police Department Trial Board or Appeal Board in connection with his firing and subsequent reinstatement at a reduced rank.[3] Rather, Chrisco's complaint focuses entirely upon allegations that defendants deprived him of liberty and of procedural rights guaranteed by the constitution to suspects and defendants in the course of criminal investigations and prosecutions. Thus the issues before the Court are unrelated to whether or not Chrisco was properly discharged or reduced in rank, and are limited to whether Shafran or Williams violated any of Chrisco's constitutional rights during the interrogation sessions.

## I. STATUTORY PLEADING REQUIREMENTS UNDER SECTIONS 1983 AND 1985(3)

Chrisco seeks to make out a cause of action for money damages against defendants under sections 1983 and 1985(3) of Title 42, United States Code, for the alleged violation of his constitutional rights.[4] Defendant Williams argues that Chrisco has failed to state a claim under section 1983 because the complaint does not allege that the defendants acted with the purpose of discriminating between persons or classes of persons. Williams also argues that Chrisco has failed to state a claim under section 1985(3) because he does not allege that the defendants acted with any racial or otherwise class-based invidiously discriminatory animus.

■ Section 1983 creates a cause of action for deprivation under color of state law of any right guaranteed by the federal constitution or a federal statute. *See Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502,

---

**3.** At the hearing on the motions to dismiss, when asked whether the Trial Board or Appeal Board had violated any procedural due process rights of Chrisco, counsel for Chrisco responded:

> Not with what they had in front of them. In other words, when Mr. Chrisco walked into the Trial Board, they asked him how he wanted to plead, and he pled guilty. It is the steps leading up to that that caused Mr.

Chrisco to enter that plea. Against the Trial Board itself or the Appeal Board, no.

Transcript of October 24, 1980, hearing (Doc. No. 44) at 6.

**4.** Although the complaint simply refers to section 1985, Plaintiff's Brief in Opposition to Williams' Motion to Dismiss (Doc. No. 17) indicates that Chrisco is asserting a claim under 42 U.S.C. § 1985(3).

2504–06, 65 L.Ed. 555 (1980). Proof of class-based discrimination is not an element of a cause of action under section 1983. Therefore Chrisco need neither plead nor prove that defendants acted with any discriminatory animus in order to make out a claim for relief pursuant to section 1983. By contrast, an essential element of any cause of action under section 1985(3) is proof that the defendants were motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus...." *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). Chrisco's complaint does not allege any class-based animus and therefore fails to state a claim under section 1985(3).

Since the claim for damages pursuant to section 1983 will not be dismissed for failure to allege discriminatory animus, the Court will proceed to examine with particularity each of the claims raised by Chrisco to determine whether he has alleged constitutional violations cognizable under that statute.

## II. ALLEGED VIOLATIONS OF CHRISCO'S CONSTITUTIONAL RIGHTS

*Unreasonable Search and Right to be Informed of Charges*

■ Chrisco, in his complaint, asserts that the defendants violated his right to be free from unreasonable searches. As neither the complaint nor Chrisco's affidavit alleges any search by defendants, Chrisco has failed to state any claim under the fourth amendment. Chrisco also claims that the defendants violated his sixth amendment right "to be informed of the true nature and cause of the accusation against him...." This claim apparently is based upon Chrisco's allegation that Shafran and Williams told him prior to questioning that he was only a witness, when in fact they had focused upon him as a suspect. The sixth amendment does not, however, give citizens a constitutional right to be informed that they have become suspects in a criminal investigation. Rather, the sixth

amendment right "to be informed of the nature and cause of the accusation ..." guarantees that a person who has been formally charged with a crime will be given sufficient details about the offense charged so as to permit him to adequately present his defense and to plead the judgment as a bar to any further prosecution for the same offense. *See, e. g., United States v. Strauss*, 283 F.2d 155, 158–59 (5th Cir. 1960); *Wilkinson v. Haynes*, 327 F.Supp. 967, 969 (W.D.Mo.1971). Since Chrisco was never charged with a criminal offense the rights guaranteed by this provision of the sixth amendment are not implicated.

*Self-Incrimination and Coercive Interrogation*

■ Chrisco's claim that Williams and Shafran are liable for violations of his right to be free from self-incrimination must also fail. The fifth amendment, applicable to the states through the fourteenth amendment, protects only against compelled self-incrimination. Ordinarily, a witness who has been required to give testimony[5] has the burden of making a timely assertion of the privilege against self-incrimination, and a witness who makes incriminatory statements without affirmatively claiming the privilege will be considered not to have been compelled within the meaning of the fifth amendment. *See Garner v. United States*, 424 U.S. 648, 653–56, 96 S.Ct. 1178, 1181–83, 47 L.Ed.2d 370 (1976). A witness who does assert the privilege may properly refuse to answer unless he is given immunity from the use of his incriminating testimony in any subsequent criminal proceeding against him. *Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972). Chrisco, however, has not alleged that he ever asserted the privilege against self-incrimination and ordinarily in these circumstances there could be no fifth amendment violation.

Additional factors, however, require further examination of Chrisco's fifth amend-

5. The Court assumes for the purposes of this opinion that Chrisco was required to appear at the interview sessions.

ment claim. Chrisco asserts that defendants restricted his freedom to leave during the final interrogation session,[6] a fact, which, if proven, would transform the final session into custodial interrogation to which the mandates of *Miranda v. Arizona*[7] apply. In addition, Chrisco alleges that he was not given his *Miranda* warnings and that he was not permitted to have an attorney present or to discuss the conversations with his attorney.[8] Thus, assuming there was "custodial interrogation," Chrisco has alleged violations of his *Miranda* rights. Accepting Chrisco's allegations as true, I nonetheless conclude that the failure to give *Miranda* warnings to one subjected to custodial interrogation does not, standing alone, give rise to a damages action for violation of fifth amendment rights.

Initially, it must be noted that the right to *Miranda* warnings and the right to have counsel present during custodial interrogation are not independent constitutional rights. Rather, they are "procedural safeguards ... devised to inform accused persons of their right of silence and to assure a continuous opportunity to exercise it...." *Miranda v. Arizona, supra,* 384 U.S. at 444, 86 S.Ct. at 1612. The issue addressed in *Miranda* was not whether a defendant's fifth amendment rights were violated when he was not given particular warnings; rather, the constitutional issue decided was "the *admissibility* of statements obtained from a defendant questioned while in custody or otherwise deprived of his freedom of action in any significant way." *Id.* at 445, 86 S.Ct. at 1612. (emphasis added). The holding in *Miranda* is that because of the "compulsion inherent in custodial surroundings," *id.* at 458, 86 S.Ct. at 1619, absent adherence to the procedural safeguards outlined in *Miranda*, statements made by a defendant in the course of custodial interrogation will be presumed to have been compelled. Statements taken in violation of *Miranda* are inadmissible not because the defendant's fifth amendment rights were violated when he was not given the required warnings, but because to admit the statements would cause the defendant "to be a *witness* against himself"[9] in violation of the fifth amendment. This analysis has been applied by the courts in unanimously concluding that failure to give a suspect *Miranda* warnings does not give rise to an action for damages under section 1983.[10] The applicable rule of law was aptly stated by the Tenth Circuit Court of Appeals in *Bennett v. Passic,* 545 F.2d 1260, 1263 (10th Cir. 1976):

> The Constitution and laws of the United States do not guarantee ... the right to *Miranda* warnings. They only guarantee ... the right to be free from self-incrimination. The *Miranda* decision does not even suggest that police officers who fail to advise an arrested person of his rights are subject to civil liability; it requires, at most, only that any confession made in the absence of such advice of rights to be excluded from evidence. No rational argument can be made in support of the notion that the failure to give *Miranda* warnings subjects a police officer to liability under the Civil Rights Act.

Chrisco's allegation that he was not given his *Miranda* warning therefore fails to state a claim upon which relief can be granted.

■■■■ Chrisco also argues that defendants violated his fifth amendment rights by engaging in "coercion intended to secure a confession or plea of guilty...." Due process prohibits any use at a criminal trial of an involuntary statement by the defendant. *Mincey v. Arizona,* 437 U.S. 385, 398, 98 S.Ct. 2408, 2416, 57 L.Ed.2d 290 (1978).

---

6. *See* pp. 1321–1322, *infra.*

7. 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

8. The significance of the defendants' denying Chrisco access to counsel is discussed at pp. 1319–1321, *infra.*

9. U.S.Const. amend. V (emphasis added).

10. *See Bennett v. Passic,* 545 F.2d 1260, 1263 (10th Cir. 1976); *Thornton v. Buchmann,* 392 F.2d 870, 874 (7th Cir. 1968); *Davis v. Hudson,* 436 F.Supp. 1210, 1214 & n.14 (D.S.C.1977); *Hampton v. Gilmore,* 60 F.R.D. 71, 81 (E.D. Mo.), aff'd, 486 F.2d 1407 (8th Cir. 1973); *Allen v. Eicher,* 295 F.Supp. 1184, 1185–86 (D.Md. 1969); *Ambrek v. Clark,* 287 F.Supp. 208, 210 (E.D.Pa.1968).

Similarly, it violates due process for a court to accept an involuntary guilty plea. *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S.Ct. 1709, 1711, 23 L.Ed.2d 274 (1969). These due process rights only come into play in the context of a criminal prosecution. Since Chrisco does not allege that any involuntary statements were ever used against him in a criminal proceeding or that he ever entered an involuntary plea of guilty to any criminal charges, his complaint, on its face, fails to state a cause of action for violation of these due process rights.

There exists, however, some authority for the proposition there is a cause of action for damages for an involuntary confession obtained by "fear of hurt, torture, exhaustion ..." or other coercion because such police conduct offends the requirements of decency and fairness " 'implicit in the concept of ordered liberty' " imposed upon the states by the due process clause. *See Duncan v. Nelson*, 466 F.2d 939, 944 (7th Cir.), *cert. denied*, 409 U.S. 894, 93 S.Ct. 116, 34 L.Ed.2d 152 (1972). In *Duncan* the Court recognized a cause of action for bodily pain and injury and mental anguish proximately caused by unconstitutionally coercive interrogation tactics, but held that the interrogators could not be held liable in damages for the suspect's subsequent conviction and incarceration. *Id.* at 942–45. *Duncan* is inapplicable to this case. Unlike *Duncan*, there has been no prior adjudication that the defendants engaged in unlawful coercion intended to produce an involuntary confession. Moreover, Chrisco has neither alleged facts that would support the conclusion that defendants' conduct exceeded the bounds of due process, nor has he alleged any concrete physical harm or mental suffering proximately caused by the interrogation itself, as opposed to harm that may have been caused by his subsequent firing and reinstatement at reduced rank. Chrisco's conclusory allegations of coercive tactics are insufficient to survive a motion to dismiss.

*Right to Counsel*

Chrisco's complaint asserts that defendants deprived him of his sixth amendment right to counsel, but does not specify the nature of the alleged deprivation. Briefs submitted by counsel for Chrisco indicate that the alleged deprivation of counsel takes two major forms: (1) Preventing Chrisco from having counsel present during plea negotiations; and, (2) forbidding Chrisco from having counsel present during accusatory custodial interrogation.

Most troubling is Chrisco's claim that defendants deprived him of the assistance of counsel during "plea negotiations." Chrisco has alleged that defendants instructed him that he could not discuss any of their conversations with his attorney, and that he was not permitted to have an attorney present during any of the meetings. The rule is established in this circuit that a defendant has the right to the assistance and guidance of counsel during plea bargaining. *Gallarelli v. United States*, 441 F.2d 1402, 1405 (3d Cir. 1971). Moreover if Chrisco can establish that Shafran and Williams purposefully interfered with his right to counsel he can recover damages under section 1983 without proving that this conduct prejudiced him at a subsequent criminal trial. *See Via v. Cliff*, 470 F.2d 271, 275 (3d Cir. 1972); *but cf. United States v. Morrison*, ── U.S. ──, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981) (dismissal of indictment because of purposeful government interference with attorney-client relationship inappropriate absent demonstrable prejudice or substantial threat thereof). Thus, if these conversations were "plea bargaining," Chrisco has made out a facially valid claim of interference with his right to counsel. Whether Chrisco has stated such a claim turns initially on whether his conversations with Shafran and Williams were plea negotiations to which the sixth amendment right to counsel attached.

The sixth amendment right to counsel, as applied to the states through the fourteenth amendment, attaches at the time adversary judicial proceedings have been initiated against a person by way of formal charge, preliminary hearing, indictment, information or arraignment. *See, e. g., Brewer v. Williams*, 430 U.S. 387, 398, 97 S.Ct. 1232, 1239, 51 L.Ed.2d 424 (1977); *Kirby v. Illinois*, 406 U.S. 682, 688–89, 92 S.Ct.

1877, 1881–82, 32 L.Ed.2d 411 (1972). At the time Chrisco was questioned by Williams and Shafran no formal criminal charges had been filed against him, and he was at most a suspect in the state's investigation of the thefts from the School Board warehouse and the inconclusive 1976 investigation by the Wilmington police officers. Thus, under traditional sixth amendment analysis, Chrisco's right to counsel had not attached at the time he was questioned by Shafran and Williams. There is, however, a strong argument that the sixth amendment right to counsel attaches during plea negotiations which occur prior to the commencement of adversary judicial proceedings. Judge Wiseman, of the Middle District of Tennessee, in a lengthy dissent, recently concluded that statements of a defendant were obtained in violation of the right to counsel after a government agent approached the defendant with "overtures of plea negotiations" prior to the time the defendant had been indicted or otherwise charged. *See United States v. Sikora*, 635 F.2d 1175, 1180 (6th Cir. 1980) (Wiseman, District Judge, dissenting).[11] Judge Wiseman reasoned that the right to counsel attaches during plea bargaining occurring prior to the time formal charges have been brought because the fact that the government is willing to engage in plea bargaining is proof that the government has made a commitment to prosecute and that the adverse positions of the government and the defendant have solidified in much the same manner as when formal charges are brought. Since plea bargaining is decidedly a critical stage of the prosecution, Judge Wiseman concluded that a defendant is entitled to the protection of the sixth amendment in those rare instances when plea bargaining precedes the filing of formal charges. *See id.* at 1320–1321. The American Bar Association takes the position that a prosecutor should generally engage in plea negotiations only through defense counsel. *See* ABA Project on Standards for Criminal Justice: Standards Relating to Pleas of Guilty § 3.1(a) (Approved Draft 1968).

 Recognizing the important role played by counsel in plea bargaining, I conclude that there can be factual contexts in which the sixth amendment right to counsel attaches prior to the time formal criminal charges have been filed. However, because the transactions of which Chrisco complains were not true plea negotiations of the nature which trigger a defendant's right to the protection of the sixth amendment, Chrisco has failed to make out a claim for purposeful interference with his right to counsel.

Plea bargaining, as it has been analyzed by the courts and commentators, involves an agreement, and discussions with a view toward an agreement, whereby a defendant pleads guilty to a criminal charge in exchange for any of a variety of concessions by the government.[12] Typically a defendant may agree to plead guilty to a lesser included offense or a single count of an indictment in exchange for the prosecutor's promise to dismiss other charges or make a particular sentence recommendation. In this case, however, there was no discussion of Chrisco pleading guilty to a criminal offense in exchange for concessions by the Delaware Department of Justice. Rather, the discussions focused on the possible exercise of Shafran's prosecutorial discretion not to bring any criminal charges against Chrisco in exchange for Chrisco's cooperation and agreement to plead guilty to administrative charges within the Wilmington Police Department.

 The primary purpose of counsel during plea negotiations is to ensure that any decision or agreement by the defendant to plead guilty is knowing, voluntary and

---

11. The majority, in affirming Sikora's conviction, entered a judgment order concluding, *inter alia*, that Sikora's right to counsel had not attached and that, as a factual matter, there had been no plea bargaining.

12. *See, e. g., Santobello v. New York*, 404 U.S. 257, 260–61, 92 S.Ct. 495, 497–98, 30 L.Ed.2d 427 (1971) (plea bargaining is disposition of criminal charges by agreement between prosecutor and accused culminating in guilty plea); Alschuler, *Plea Bargaining and Its History*, 79 Colum.L.Rev. 1, 3–4 (1979) (plea bargaining is exchange of official concessions for defendant's act of self-conviction).

intelligent. *See Gallarelli v. United States, supra,* 441 F.2d at 1405; *cf. Moore v. Michigan,* 355 U.S. 155, 78 S.Ct. 191, 2 L.Ed.2d 167 (1957). In this case there was no discussion of or possibility that Chrisco would enter any agreement to plead guilty to any criminal charges. The Court must therefore conclude that Chrisco had no constitutional right to the assistance of counsel during whatever negotiations there may have been regarding the state prosecutor's discretionary decision whether to file any criminal charges. Of course an attorney, in addition to advising his client, also frequently takes on the role of negotiator for his client, seeking to obtain the most advantageous concessions from the government in exchange for his client's agreement to plead guilty. Similarly, in these informal pre-indictment negotiations, Chrisco would have been better served by the presence and assistance of counsel. I conclude, however, that to the extent Chrisco seeks damages for interference with his right to counsel during plea negotiations, he has failed to allege a constitutional violation upon which relief may be granted.

■ Chrisco also argues that he was entitled to the assistance of counsel because he was the subject of custodial interrogation at a time the investigation had focused upon him. As noted above, however, it is well established that a defendant's sixth amendment right "to have the Assistance of Counsel for his defence" in a criminal prosecution attaches at the time adversary judicial proceedings have begun. *See, e. g., Brewer v. Williams, supra,* 430 U.S. at 398, 97 S.Ct. at 1239; *Kirby v. Illinois, supra,* 406 U.S. at 688–89, 92 S.Ct. at 1881–82; *Powell v. Alabama,* 287 U.S. 45, 57, 53 S.Ct. 55, 59, 77 L.Ed. 158 (1932). Police interrogation of a defendant violates the sixth amendment only if it occurs after judicial proceedings have begun, because it then constitutes deliberate elicitation of incrimi-

nating evidence from the defendant in the absence of counsel in violation of the rule of *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). In this case it is undisputed that adversary judicial proceedings had not been initiated against Chrisco. Therefore, if there was a right to counsel during the questioning of Chrisco, it stems not from the sixth amendment, but from the procedural safeguards required by *Miranda v. Arizona, supra,* which serve to protect a suspect's exercise of the fifth amendment privilege against self-incrimination during custodial interrogation.[13]

Accepting as true for purposes of the motions to dismiss the facts as stated in the complaint, as the Court must, Chrisco's allegation that the defendants subjected him to custodial interrogation and affirmatively prevented him from having counsel present during this interrogation nonetheless fails to state a claim for relief. The "right to counsel" during custodial interrogation recognized in *Miranda* fundamentally differs from the sixth amendment right to the assistance of counsel at all critical stages of a criminal proceeding. The fifth amendment does not give anyone a constitutional right to the assistance of counsel; it guarantees the privilege not to be compelled to be a witness against oneself in a criminal prosecution. To the extent that *Miranda v. Arizona, supra,* recognizes a right to counsel during custodial interrogation it is because the presence of counsel is "the adequate protective device necessary to make the process of police interrogation conform to the dictates of the privilege. This presence would insure that statements made in the government-established atmosphere are not the product of compulsion." 384 U.S. at 466, 86 S.Ct. at 1623. Thus, the right to presence of counsel, just like the right to pre-interrogation warnings, is not a constitutional right, but a procedural safeguard

13. *Escobedo v. Illinois,* 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), appeared to hold that the sixth amendment right to counsel attached during certain types of pre-indictment custodial interrogation. Subsequent cases, however, indicated that the prime purpose of *Escobedo* was to effectuate the privilege against self-incrimination, not to vindicate the constitutional right to counsel. To the extent that *Escobedo* relied upon the sixth amendment, it has been limited to its special facts. *See Moore v. Illinois,* 434 U.S. 220, 232–33, 98 S.Ct. 458, 466–67, 54 L.Ed.2d 424 (1977) (Rehnquist, J., concurring); *Johnson v. New Jersey,* 384 U.S. 719, 729, 733–34, 86 S.Ct. 1772, 1778, 1780–81, 16 L.Ed.2d 882 (1966).

which protects the constitutional right to be free from compelled self-incrimination. For the same reasons that there is no action for damages for failure to advise of *Miranda* warnings,[14] there can be no civil action for denying access to counsel during custodial interrogation. *Miranda* recognizes the right to have excluded from evidence statements made during custodial interrogation at which access to counsel was denied because to admit them would make the defendant, through the use of statements presumed to have been compelled, a witness against himself. While evidence seized in violation of the fourth amendment, or statements elicited from a defendant in violation of his sixth amendment-*Massiah* rights are excluded in order to *remedy* a constitutional violation, in the *Miranda* context the exclusion of the incriminating statements is itself the constitutional right.

I therefore conclude that Chrisco has failed to allege a cognizable claim for violation of either his sixth amendment right to counsel or his fifth amendment *Miranda* "right to counsel."

### Deprivation of Liberty

[18] The final claim to be considered relates to an alleged deprivation of liberty without due process at the last interrogation session. Chrisco states in his affidavit (Doc. No. 30) that at the final session, on November 1, 1977, "I believed that I was in custody, because they didn't allow me to leave the room, and, as Shafran said, because I was subject to immediate arrest." He goes on to suggest that he was "permitted to go home" only after he acknowledged withholding information and agreed to plead guilty to the departmental charge of lying under oath. Shafran's affidavit, in contrast, states that Chrisco appeared voluntarily at all of the interview sessions, that he was free to leave at any time, and that his freedom was not restricted in any significant manner. Although Chrisco does not controvert the assertion that he appeared voluntarily at the meetings, the affidavits present a factual dispute as to whether the defendants, at the final eight-hour session, restricted Chrisco's freedom to leave.[15]

Although inartfully pleaded, Chrisco makes out a claim similar to the common law cause of action for false imprisonment. In essence he alleges that Shafran and Williams, by force or threat of force, prevented his departure from the Edgemoor office for a period of up to eight hours. The question remains, of course, whether Chrisco has made out a claim of constitutional dimension cognizable under section 1983. Individuals have a fundamental interest in being free from governmental restraints on personal freedom of movement that is protected by both the fourth amendment prohibition against unreasonable seizure of persons [16] and the due process clause of the fourteenth amendment.[17] In an analogous situation, this Court has held that there is a cause of action under section 1983 for an arrest without probable cause even when the only restraint on the individual's free-

---

14. *See* p. 1317, *supra.*

15. Subsequent to oral argument Chrisco admitted, by failing to respond to a Request for Admission, the truth of the following statement:

> At the November 1, 1977 interview of Willie Chrisco conducted by Milton P. Shafran and Carl Williams, Williams told Chrisco:

> If you're going to relate to us the same thing that you've already told us, with all those I-don't-knows, and all that, there is no need in wasting his time and ours. I'll say it again. You should get up right now and walk out the door, you should go see your attorney and explain to him if you can recall probably what the charges we are talking about—perjury, official misconduct, and any-

thing the Department may see fit to bring. That's your alternative as I see it.

> Williams made this statement before Chrisco made any of the admissions of wrongdoing referred to in paragraph 14 of the May 15, 1980 Affidavit of Willie Chrisco filed in this action.

This admission only establishes that Williams, at some point in an eight-hour session, *told* Chrisco he was free to leave. It does not resolve whether Williams or Shafran restrained Chrisco's liberty earlier or later in the session.

16. *See, e. g., Terry v. Ohio*, 392 U.S. 1, 9, 88 S.Ct. 1868, 1873, 20 L.Ed.2d 889 (1968).

17. *See, e. g., Romeo v. Youngberg*, 644 F.2d 147 at 159–160 (3d Cir. 1980) (en banc).

dom of movement was the few minutes required to write up a traffic citation. *See Richardson v. City of Newark*, 449 F.Supp. 20, 23 (D.Del.1978), *aff'd*, 620 F.2d 289 (3d Cir. 1980). Here, although Chrisco was not formally arrested, he alleges interference with his freedom of movement much more substantial than was alleged in *Richardson*. Moreover, the protections of the fourth amendment are triggered "whenever a police officer accosts an individual and restrains his freedom to walk away ...," regardless of whether there has been a formal arrest. *See Terry v. Ohio, supra*, note 6, 392 U.S. at 16, 88 S.Ct. at 1877. Certainly due process no more requires a formal arrest to trigger an individual's right to be free from governmental interference with his freedom of movement than does the fourth amendment. In addition, the weight of authority supports the view that there is a cause of action under section 1983 for false imprisonment by government officials, although typically these cases involve claims of false imprisonment as a result of an alleged false arrest. *See, e. g., Reeves v. City of Jackson, Mississippi*, 608 F.2d 644, 649–50 (5th Cir. 1979); *Lessman v. McCormick*, 591 F.2d 605, 609–10 (10th Cir. 1979); *Patzig v. O'Neil*, 577 F.2d 841, 848 (3d Cir. 1978). The Court must conclude that Chrisco will have made out a cause of action under section 1983 if he proves that the defendants, without lawful authority, intentionally detained him at the Edgemoor office for any significant period of time.

## III. PROSECUTORIAL IMMUNITY

■ Shafran forcefully argues that he enjoys absolute immunity because the sessions with Chrisco involved both plea bargaining and efforts to obtain information necessary to determine whether to seek indictments against other officials. However,

in view of the Court's determination that Chrisco has stated a claim only in connection with the alleged restraints on his liberty, it is unnecessary to resolve the broad claim of immunity asserted by Shafran. Instead, the question before the Court is narrow—whether a prosecutor has absolute immunity from suit for an alleged unconstitutional detention for the purposes of questioning and initiating negotiations relating to potential criminal charges.

The Supreme Court in recent years has devoted considerable attention to the question of immunities of high government officials. The Court has rejected claims by high officials of the federal [18] and state [19] governments that they have an absolute immunity to suits for damages arising out of violations of citizens' constitutional rights. In rejecting these claims of absolute immunity, the Court has emphasized the value of giving redress to citizens who have been deprived of constitutional rights, and concluded that it would not unduly interfere with the exercise of judgment and discretion by high government officials to hold them liable for conduct beyond established constitutional limits. *See Butz v. Economou*, 438 U.S. 478, 506–07, 98 S.Ct. 2894, 2910–11, 57 L.Ed.2d 895 (1978). Absolute immunity has generally been restricted to judges for acts performed in their judicial capacity [20] and to prosecutors for acts intimately associated with the criminal process.

The leading case establishing a prosecutor's immunity in a civil action for damages arising out of an alleged deprivation of constitutional rights is *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). In *Imbler* the Court held that a prosecutor is immune from a civil suit for damages under section 1983 for his conduct

---

18. *See Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). The District of Columbia Circuit, in a case now under consideration by the Supreme Court, has held that even the President of the United States is entitled to only a qualified immunity for his role in subjecting a citizen to an unconstitutional or illegal wiretap. *Halperin v. Kissinger*, 606 F.2d 1192, 1210–13 (D.C.Cir.1979), *cert. granted*, 446 U.S. 951, 100 S.Ct. 2915, 64 L.Ed.2d 807 (1980).

19. *See Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

20. *See, e. g., Stump v. Sparkman*, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978); *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967).

in initiating a prosecution and presenting the State's case. *Id.* at 431. The Court identified a number of public policy considerations that counsel in favor of giving prosecutors absolute immunity for acts in their quasi-judicial capacity, including (1) the need that a prosecutor's every decision not be colored by fear of an action for civil damages and that he feel free to present all relevant evidence; (2) the danger that limited prosecutorial resources would be diverted to defending civil damage actions; and (3) the significant likelihood that even the most honest prosecutor, in view of the ordinary time constraints and heavy caseload, would be subject to liability. The Court expressly declined to decide, however, whether a prosecutor is entitled to absolute immunity when he acts in an administrative or investigative capacity, as opposed to his quasi-judicial role as an advocate.

The courts have generally refused to extend absolute immunity to activities of prosecutors that can be characterized as "investigative" or traditional police work. Thus prosecutors directing or participating in the unlawful arrest or detention of citizens have been afforded only a qualified immunity. *See Apton v. Wilson*, 506 F.2d 83, 92–94 (D.C.Cir.1974); *Clark v. Lutcher*, 77 F.R.D. 415, 420 (M.D.Pa.1977); *but cf. Daniels v. Kieser*, 586 F.2d 64, 68–69 (7th Cir. 1978) (prosecutor not liable in damages for unlawful arrest and detention when he acted to secure person's presence as witness at criminal trial), *cert. denied*, 441 U.S. 931, 99 S.Ct. 2050, 60 L.Ed.2d 659 (1979). Similarly, prosecutors responsible for unlawful searches and seizures of tangible evidence have also been only given a qualified immunity. *See, e. g., Marrero v. City of Hialeah*, 625 F.2d 499, 510–11 (5th Cir. 1980); *Jacobson v. Rose*, 592 F.2d 515, 524 (9th Cir. 1978), *cert. denied*, 442 U.S. 930, 99 S.Ct. 2861, 61 L.Ed.2d 298 (1979); *J. D. Pflaumer, Inc. v. Department of Justice*, 450 F.Supp. 1125, 1133 (E.D.Pa.1978); *Lofland v. Meyers*, 442 F.Supp. 955, 958 (S.D.N.Y.1977).

The Third Circuit Court of Appeals addressed the question of a prosecutor's immunity from liability for investigative activity in *Forsyth v. Kleindienst*[21] and held that a prosecutor is absolutely immune from civil suit for such activity "to the extent that the securing of information is necessary to a prosecutor's decision to initiate a criminal prosecution...." 599 F.2d at 1215. Thus in *Forsyth* the Court concluded that Attorney General Mitchell's authorization of warrantless wiretaps was protected by absolute immunity only if he was acting "in an attempt to secure information to determine whether to initiate a criminal prosecution...." *Id.* at 1216. The Court therefore ordered the two cases before it remanded to the district court for further analysis and, if necessary, a limited factual inquiry to determine whether the Attorney General's decision to authorize the warrantless wiretaps was made in the context of his quasi-judicial function or in the context of a purely investigative or administrative function. *Id.* at 1215, 1217.

Supreme Court cases rejecting absolute immunity for most executive officials and recent case law in the lower courts affording prosecutors only a limited immunity for investigative activities persuade me that the rule in this circuit that a prosecutor is absolutely immune for information gathering activity which is "necessary to [his] decision to initiate a criminal prosecution ..."[22] should be carefully and narrowly construed. Certainly neither the Supreme Court nor the Third Circuit Court of Appeals intended to give prosecutors blanket freedom from liability for directing or participating in blatantly unlawful arrests, searches of homes, or physical abuse of suspects, whenever it could reasonably be said that such conduct was calculated or likely to produce evidence capable of influencing a prosecutor's decisions about whom to prosecute. This conclusion is especially compelling in view of the fact that a prosecutor, unlike many other government offi-

21. 599 F.2d 1203 (3d Cir. 1979), *petition for cert. filed*, 48 U.S.L.W. 3481 (U.S. Jan. 18, 1980) (No. 79–1120).

22. *Forsyth v. Kleindienst, supra*, 599 F.2d at 1215.

cials who are given only a qualified immunity, as an attorney and an officer of the courts is well aware of the constitutional restraints on his conduct.[23]

The only surviving claim in this action is the alleged deprivation of Chrisco's liberty at the final interrogation session. The Court is at pains to hypothesize how a prosecutor's imposition of physical restraints on a person's liberty could fairly be characterized as information gathering activity or how such conduct could in any real sense be necessary to a prosecutor's determination of whom to prosecute. The Court concludes, however, that decision on the question of Shafran's prosecutorial immunity at this time would be premature. In both *Forsyth, supra,* and in *Mancini v. Lester,* 630 F.2d 990 (3d Cir. 1980), the Court of Appeals remanded to the district court for further factual development before determining whether the challenged information gathering activity fell within the prosecutor's quasi-judicial function. A more detailed factual record is also required in this case. Shafran has submitted an affidavit in which he states that one of the primary purposes of interviewing Chrisco was to secure information needed to decide whom to prosecute in connection with the thefts from the School Board warehouse. This evidence is relevant, but insufficient, standing alone, to determine whether Shafran is entitled to absolute immunity. The Court must know more about what happened at the November 1 session before determining whether the facts support Shafran's characterization of the session and whether the alleged detention was necessary to Shafran's decisions about whom to prosecute. The affidavits of Chrisco and Shafran and the transcripts of brief portions of the final eight-hour session now in the record are insufficient to form the basis of a reasoned decision on the question of Shafran's prosecutorial immunity.

## IV. SPECIFICITY OF THE PLEADINGS

The final issue to be addressed is Shafran's claim that the complaint fails to allege with sufficient specificity the acts of defendants alleged to have violated Shafran's civil rights and therefore must be dismissed. The Court agrees with Shafran that the complaint was inartfully drawn and in many instances failed to state with any particularity the acts of defendants or the legal theories upon which Chrisco based his cause of action. Indeed, prior to hearing argument from defendants on their motion to dismiss, the Court felt compelled to request counsel for plaintiff to enumerate the precise constitutional violations complained of and the factual allegations supporting those claims. *See* Doc.No. 44 at 1–7. However, in view of the fact that the Court has determined that all but one of Chrisco's claims must be dismissed for failure to state a cause of action, it is unnecessary to decide whether the dismissed claims were also inadequately pleaded. Regarding the alleged deprivation of liberty, the complaint clearly does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," as required by Rule 8(a)(2) of the Federal Rules of Civil Procedure. Moreover, "[t]he rule is well established in this circuit that a civil rights complaint that relies on vague and conclusory allegations does not provide 'fair notice' and will not survive a motion to dismiss." *United States v. City of Philadelphia,* 644 F.2d 187 at 204 (3d Cir. 1980). Therefore, unless Chrisco files within 20 days an amended complaint, including a clear and plain statement of the claimed deprivation of liberty and conforming to the pleading requirements for civil rights complaints, the remaining claim will be dismissed.

## V. CONCLUSION

The motion to dismiss for failure to satisfy the pleading requirements of 42 U.S.C.

---

**23.** "[W]e see no substantial basis for holding, as the United States would have us do, that executive officers generally may with impunity discharge their duties in a way that is known to them to violate the United States Constitution or in a manner that they should know transgresses a clearly established constitutional rule." *Butz v. Economou, supra,* 438 U.S. at 507, 98 S.Ct. at 2911.

§ 1983 will be denied and the motion to dismiss for failure to satisfy the pleading requirements of 42 U.S.C. § 1985(3) will be granted. All claims, with the exception of the alleged deprivation of liberty, will be dismissed for failure to state a claim upon which relief can be granted. Shafran's motion to dismiss on the ground of prosecutorial immunity is denied, with leave to renew the motion after further factual development. The sole surviving claim—the alleged deprivation of liberty—will be dismissed unless an amended complaint is filed within twenty days.