UNITED STATES of America, Plaintiff,

v.

James BUSSE, Defendant.

No. 92–C–1194, 92–Cr–90.

United States District Court, E.D. Wis.

Feb. 22, 1993.

Susan M. Knepel, Asst. U.S. Atty., Milwaukee, WI, for plaintiff.

Wendy Patrickus, Gerald Boyle, Milwaukee, WI, for defendant.

DECISION AND ORDER

GOODSTEIN, United States Magistrate Judge.

Currently pending before the court is the motion of James Busse to vacate his sentence pursuant to 28 U.S.C. § 2255. Busse claims that his attorney was ineffective in representing him in his misdemeanor criminal case which was tried before this court. The court conducted an evidentiary hearing regarding Busse's ineffective assistance of counsel claim on January 20, 1993. Testifying at the hearing were Attorney Michael Trewin, who represented Busse throughout the criminal proceedings and the defendant, James Busse.

Based upon the testimony at the hearing and the court record in this case, the court makes the following findings of fact:

Sometime in 1991, James Busse contacted Attorney Michael Trewin regarding the bankruptcy reorganization of Busse's farm. During, or before, June of 1991, the United States filed an adversary proceeding against Busse in the bankruptcy matter seeking to have certain farm loans declared non-dischargeable. Assistant United States Attorney Dan Flaherty represented the Commodity Credit Corporation in that matter. During the same period, the United States represented by Assistant United States Attorney Susan Knepel, was considering felony criminal charges against Busse under 15 U.S.C. § 714m(c), the conversion of property which is pledged to the Commodity Credit Corporation. On December 27, 1990, Knepel had sent a letter to James Busse indicating that the government had received information regarding a possible violation of § 714m(c) and wanted to speak with him, or his attorney about the matter.

Busse sent AUSA Knepel's letter to Attorney William Hickmann, and then on April 26, 1991, AUSA Knepel sent a followup letter to Hickmann. Attorney Hickmann responded on May 2, 1991, indicating that he was recommending that Busse retain new counsel. Busse then contacted Attorney Trewin, who was handling his bankruptcy matter, and it was agreed that Trewin would also handle the potential criminal matter.

Attorney Trewin, by letter dated July 31, 1991, advised AUSA Knepel that because of the timing of the government's interest in criminal violations, he believed the criminal action was an attempt to collect on an unsecured claim in the pending bankruptcy action. Attorney Trewin further advised AUSA Knepel that he was "predisposed to pursue this matter in the bankruptcy court setting." Trewin testified that it was his belief that the criminal matter could be subsumed within the bankruptcy matter, and the bankruptcy automatic stay provisions would be applicable. AUSA Knepel responded by advising Attorney Trewin that the criminal action was separate from the bankruptcy action and not in any way connected.

On September 27, 1991 AUSA Knepel sent a letter to Attorney Trewin together with a proposed plea agreement. Under the proposed plea agreement, Busse would agree to plead guilty to a one count misdemeanor information charging a violation of 15 U.S.C. § 715m(c). In exchange, the government would recommend a two level decrease for acceptance of responsibility and would not object to the defendant's request for a downward departure from the applicable sentencing guideline range. The plea agreement also provided for restitution in the amount of $27,890.30 to be payable under the terms and conditions set by the court. In her letter, AUSA Knepel advised Trewin that the sentencing guideline range should be a matter of great concern to his client and that the provision for a downward departure would permit him to ask the court for a term of probation where Busse may otherwise face a period of incarceration. Attorney Trewin testified that he discussed the possibility of the plea agreement with his client over the telephone. Trewin believes he requested that his secretary send a copy of the plea agreement to Busse, but his records do not indicate that a copy was ever sent. Busse testified that he never received a copy of the plea agreement.

Trewin testified that he has practiced law for six years, primarily in the area of bankruptcy. He has never engaged in any criminal defense work in state court, and this was his first federal criminal case. Attorney Trewin testified that his theory of defense was that the defendant had a lack of knowledge that his actions were illegal and consequently, there could be no finding of specific intent. Trewin stated that he had no familiarity with the sentencing guidelines; the first time he looked at the guidelines was on the day of sentencing. Trewin discussed the plea agreement with an associate in his office who had state criminal law experience, but no federal experience. Trewin concluded that Busse would likely face probation regardless of whether he entered in a plea agreement and potentially could face a lower amount of restitution or more favorable terms than those included in the plea agreement. Accordingly, Trewin advised Busse

that probation would be the likely worst scenario.

Busse testified that he never received a copy of the plea agreement and he only discussed the plea agreement with counsel by telephone. He said that Trewin told him the agreement provided that he plead to a misdemeanor, and that he make restitution in the amount indicated. Busse testified that, at the time, he felt that some restitution was appropriate, but the amount requested by the government was too much. Busse's recollection of this conversation with Trewin was that probation was to be expected whether the matter was resolved by trial or by plea.

In retrospect, Busse testified that, knowing what he now knows, he would have accepted the plea agreement. Busse also testified that before going to trial, he knew he was "guilty" of feeding the pledged corn to his cows, but he did not fully understand or appreciate the illegality of his conduct until he read the presentence report.

On April 16, 1992, the government filed a two count information, and on May 5, 1992, it filed a superseding information. On June 29, 1992, the defendant proceeded to trial, and the jury returned a verdict of guilty on count one and not guilty on count two. The defendant filed a motion for judgment of acquittal or, for new trial, which was denied. On September 10, 1992, the defendant appeared for sentencing and was sentenced within the guidelines to a period of five months imprisonment, to be followed by five months home detention, plus restitution of $15,609.61. The defendant then filed a notice of appeal, and this motion under § 2255. Prior to filing the § 2255 motion, the defendant retained substitute counsel.

Finally, the court finds that Attorney Trewin provided the defendant with effective assistance of counsel during the jury trial and at the sentencing hearing. Despite his prior lack of knowledge of the sentencing guidelines, Trewin made some very persuasive, although unsuccessful, arguments regarding restitution, acceptance of responsibility and downward departure.

*Discussion*

■ At the outset, it should be noted that the defendant has filed a notice of appeal with the Seventh Circuit. The fact of a pending appeal, however, does not prevent this court from exercising jurisdiction over the defendant's § 2255 motion. The Seventh Circuit recently observed that ineffective assistance of counsel claims are best brought through a motion for new trial or under § 2255. See, *United States v. Booker*, 981 F.2d 289, 292 (7th Cir.1992). Since the defendant did not raise the issue of ineffective assistance of counsel in his motion for new trial, this claim might not be considered on direct appeal, if raised, although the appellate court has indicated that such a claim could be addressed if the record is sufficiently developed. *Id.* In any event, this court finds that it has jurisdiction to entertain the defendant's present § 2255 motion based on his claim of ineffective assistance of counsel.

To prevail on an ineffective assistance of counsel claim, the defendant must meet a two pronged test which was established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), and requires that "the defendant must affirmatively establish: (1) that his attorney's performance was constitutionally deficient; and, (2) that the deficiency prejudiced the outcome of the case." *United States v. Jackson*, 983 F.2d 757, 761 (7th Cir.1993). "The defendant must overcome a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' ... and the failure to establish either one of the two components is fatal to the claim." *Id.* (citations omitted).

Directing attention to the first prong of the test, has the defendant established that the performance of Attorney Trewin was constitutionally deficient? In other words, was it "below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2064. The defendant alleges that the specific acts or omissions that form the basis of his claim are counsel's failure to provide him with a copy of the plea agreement offered by the government and counsel's failure to fully discuss the application and ramification of the sentencing guidelines, as they applied to

the offered agreement, and throughout this case.

In its post hearing memorandum, the government analyzes the defendant's claim at various stages of the case, and takes the position that the defendant's right to effective assistance of counsel was not violated at any stage. The government discusses the claim prior to the imposition of charges, post charging and at the time of sentencing. The government first submits that a person has no sixth amendment right to counsel prior to the commencement of adversary judicial proceedings. See, *Kirby v. Illinois*, 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972). Therefore, at the time the government offered the plea agreement to Busse, even though he was being represented by retained counsel, the government argues that any right to counsel under the sixth amendment had not attached. Consequently, the fact that Busse may have received ineffective assistance from his attorney does not constitute a constitutional violation, and Busse is not entitled to relief under § 2255.

The defendant cites the case of *United States v. Day*, 969 F.2d 39 (3rd Cir.1992), where the petitioner filed a § 2255 motion seeking to vacate his sentence on the ground that his trial counsel failed to explain the consequences of being classified as a career offender and, had he been so informed, he would have accepted the government's plea agreement which recommended a sentence much less severe than the one he received. The *Day* court emphasized that "the plea bargain stage was a critical stage at which the right to effective assistance of counsel attaches" under the sixth amendment. *Id.* at 43. The government contends that *Day* is distinguishable from the present case because in *Day* the plea was offered after charging. While it does appear that the plea offer in *Day* was presented after the initiation of formal charges, that fact is not specifically set out or discussed in the appellate court's decision. Furthermore, the court relies on a prior decision in the case of *United States ex rel. Caruso v. Zelinsky*, 689 F.2d 435 (3rd Cir.1982), which held that the failure of counsel to advise his client of a plea bargain presented a substantial constitutional claim. It is unclear from the reported decision in *Zelinsky* as to whether the plea bargain was presented to counsel before or after formal charges.

There is support for the position that, under certain circumstances, the sixth amendment right to counsel attaches prior to the time formal criminal charges have been filed. See, *Chrisco v. Shafran*, 507 F.Supp. 1312, 1318–19 (D.Del.1981). The court in *Chrisco* discussed the important role counsel plays in plea bargaining and observed that the fact that the government is willing to engage in this process is proof that the government has made a commitment to prosecute and that adverse positions have solidified, just as when formal charges are brought. *Id.* at 1319.

Interestingly, the government cites the following from *McNeil v. Wisconsin*, — U.S. —, —, 111 S.Ct. 2204, 2209, 115 L.Ed.2d 158, 167 (1991) as to when the right to counsel attaches:

> [when] the government has committed itself to prosecute, and only then that the adverse positions of government and defendant have solidified. It is then that a defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law.

Is this not the exact same situation Busse was in at the time he and Trewin discussed the proposed plea agreement? Unfortunately, had both Trewin and Busse fully appreciated the government's resolve to prosecute (that it was not simply leverage to avoid dischargeablity of the debt), had Trewin fully explained the elements of the offense to Busse and had Busse been made aware of the mandatory application of the sentencing guidelines, in all likelihood, the plea agreement would have been accepted.

In any event, the government's position in this case that the right to counsel had not attached strikes the court as being somewhat disingenuous. The AUSA was actively engaged in pre-charge negotiation with Busse's attorney. Had Busse not been represented, he certainly would have received a copy of the proposed agreement, and the AUSA would have answered the obvious questions

he would have raised concerning the effect of the sentencing guidelines. The government at this juncture should not be able to avail itself of a posture which states that the sixth amendment right to counsel does not attach until adversary judicial proceedings have been initiated. It is clear that both the defendant and the government relied upon the actions and representations of Attorney Trewin; both should now have to accept the consequences of the assistance, or lack thereof, provided by Trewin.

 Based upon the facts of this case, this court concludes that James Busse received ineffective assistance of counsel as Trewin's performance relates to the offered plea agreement and the impact of the sentencing guidelines on Busse's decision whether or not to proceed to trial. The *Day* court stated that "[k]nowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty." *United States v. Day*, 969 F.2d at 43. The court concluded that, if the petitioner's allegations were true, he was seriously misled and received ineffective assistance of counsel. *Id.* at 44. It is clear that Busse was actively misled by his attorney. He was initially told that the criminal matter was being pursued simply as a tool for collecting restitution. He was then told that the worst that could happen to him, even if he went to trial and was convicted, was probation. This misdirected Busse's attention to the amount of restitution the government was seeking as part of the plea agreement; Busse completely ignored the proffered recommendation of a two level decrease for acceptance of responsibility and a position of no objection to the defendant's request for a downward departure. The mandatory nature of the sentencing guidelines makes it essential that the defendant has full knowledge and appreciation of their impact on the case. It is counsel's obligation to provide the defendant with this knowledge and failure to do so, at least within the context of this case, amounts to ineffective assistance of counsel.

Turning to the second prong of the *Strickland* test, did the ineffective assistance of counsel prejudice the defendant? To sustain his burden here, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *United States v. Sanchez*, 984 F.2d 769, 772 (7th Cir.1993).

First of all, it is clear from the facts that had Busse been fully informed, there is a reasonable probability that he would have accepted the plea agreement. The second question is whether the "outcome" would have been different had Busse accepted the plea agreement. In this case, outcome refers to the sentence the defendant might have received had he accepted the plea agreement compared with the sentence he did receive after trial. Interestingly, under either scenario, a sentence on only one count is involved since the jury acquitted the defendant on one of the two counts with which he was charged.

In applying the guidelines at sentencing, it was determined that the defendant's offense level was 12. This provided for a range of confinement of 10 to 16 months. Had the defendant accepted the agreement and entered a plea to one count, the government would have recommended a two level decrease for acceptance of responsibility. At offense level 10, the range of confinement would be 6 to 12 months. "Confinement" under both ranges includes imprisonment, intermittent or community confinement or home detention. Thus, under both ranges, the defendant faced incarceration, but under the 6 to 12 month range, the minimum straight incarceration is one month, while under the 10 to 16 month range, the minimum is five months. Not having received the benefit of the acceptance of responsibility decrease, the defendant faced a minimum additional period of straight jail time of four months. In a misdemeanor case where the statutory maximum is one year incarceration, a swing of four months is a significant difference.

The court concludes that counsel's deficiency prejudiced the outcome of this case. Therefore, upon the facts presented, the defendant has satisfied both prongs of the

*Strickland v. Washington* test for ineffective assistance of counsel. Parenthetically, were it not for the mandatory nature of the sentencing guidelines, the defendant's motion might have been denied. If the Sentencing Reform Act had not substantially restricted a judge's discretion probation in this case may have been a reasonable probability. One might think, as the defendant's attorney obviously did, that in a misdemeanor case probation should always be an option for the sentencing judge. However, as this case dramatically demonstrates, that is not the reality under the sentencing guidelines.

Before the court turns to the question of what relief is appropriate, it does want to address an issue raised by the government at oral argument following the evidentiary hearing. The AUSA voiced a concern that any defendant after conviction and sentencing could claim that his or her attorney failed to properly discuss the impact of the sentencing guidelines. While this is a legitimate concern, and a favorable ruling for Busse could encourage other convicted persons to raise similar claims, it would not be right to enact a blanket prohibition against all such claims. Courts will simply have to proceed with caution and prudence and analyze each such claim on its individual merits. As the court noted in *United States v. Day*, 969 F.2d at 46, n. 9, "Most defense lawyers, like most lawyers in other branches of the profession, serve their clients and the judicial system with integrity. Deliberate ineffective assistance of counsel is not only unethical, but usually bad strategy ... we refuse to presume that ineffective assistance of counsel is deliberate."

■ As to the appropriate relief, the defendant simply requests that the court exercise its discretion in fashioning a reasonable remedy. The government is more emphatic in what would constitute an appropriate remedy if the court was so inclined to grant relief to the defendant. The government states that it can no longer enter into the plea agreement so that specific performance is not a viable option. The AUSA suggests that the government now possesses information of other similar improper conduct on the part of the defendant which would preclude it from offering an identical plea agreement to Busse. In addition, the government notes that the plea agreement provided that the defendant pay restitution in an amount greater than actually imposed at sentencing. The government also objects to relief which would permit a new trial. It says that this would punish the government for errors it did not cause.

After careful consideration, this court believes that the only reasonable remedy in this case is to vacate the sentence and resentence the defendant. For the reasons stated by the government, the options of imposing the original plea agreement or a retrial are simply not viable. As to resentencing, even though Attorney Trewin, who had done a quick study of the guidelines, made cogent arguments, these were presented against the backdrop of the defendant's position at trial. In other words, the defense posture was that the defendant did not wilfully violate the law because he did not believe his actions were illegal. This, of course, hindered the persuasiveness of his argument for acceptance of responsibility. However, had the defendant at sentencing acknowledged that he knew what he was doing was illegal, the AUSA would have attacked his reversal of position as self-serving and not worthy of belief. Thus, the defendant was locked into an uninformed position he adopted in consultation with his attorney.

In fairness, the defendant should be permitted to participate in the sentencing process anew with the full knowledge and appreciation of the conduct for which he was convicted and the application of the sentencing guidelines. It will be incumbent upon the defendant to demonstrate that he should be entitled to any reduction in the offense level.

Therefore, IT IS HEREBY ORDERED that the motion of the defendant to vacate his sentence is GRANTED. The sentence of James Busse imposed in case no. 92–Cr–90 on September 10, 1992, is hereby set aside.